[Civ. No. 4855.   Fourth Dist.   July 14, 1954.]

Estate of C. T. GIBSON, Deceased. CALVIN HALL GIB-
SON et al., Respondents, v. CARMEN GIBSON, Ap-
pellant.

Horton & Knox for Appellant.

James B. Abbey and Maurice M. Sattinger for Respondents.

MUSSELL, J.—This is a proceeding to determine heirship
and was brought pursuant to the provisions of section 1080
of the Probate Code.   The petitioners, Calvin Hall Gibson,

Holt Thomas Gibson and Willis A. Gibson, adult sons of C. T. Gibson, deceased, and Helen Oreleane Mayo, daughter, allege that they are the heirs of said deceased; that the estate was the separate property of the decedent at the time of his death and not community property; and that they are entitled to have distributed to them two-thirds of the entire estate of said decedent in four equal shares. Appellant, Carmen Gibson, the surviving spouse of said decedent, alleges in her petition for letters of administration that all of the property of the estate is community property and that she is the widow of said decedent and is entitled to succeed to the entire estate.

The trial court found that of the estate left by said decedent $70,586.32 was community property and $48,067.54 was separate property. Judgment was entered ordering distribution to the petitioners of two-thirds of said separate property, to be divided equally among the four petitioners and distributing to appellant Carmen Gibson one-third of the said separate property and all of the said community property of said estate. The principal and controlling question to be here decided is whether the evidence was sufficient to sustain the findings and judgment of the trial court with respect to the character of the property involved, whether separate property of the decedent or community property.

C. T. Gibson died intestate on or about October 14, 1951, and respondents are the adult sons and daughter of decedent and his first wife, Hallie M. Gibson, to whom he had been married twice. They were first married in 1911 or 1912. This marriage was annulled in 1917 and their remarriage, which took place within several months thereafter, was dissolved by divorce in 1924. Appellant Carmen Gibson was decedent's second wife. They were married in August, 1926, and lived together until his death in 1951. In October of that year appellant filed a petition for letters of administration, alleging that all of the estate was community property, and on November 5, 1951, letters of administration were granted to her. In March, 1952, she filed an inventory of the estate listing two parcels of real estate of the appraised value of $45,000 and personal property appraised at $73,653.86. The petition to determine heirship and the interests of petitioners in the property involved was filed in May, 1952.

The real property described in the inventory as item No. 1 was purchased by the decedent from the National Bank of Imperial on January 25, 1923, and there is testimony indicating that the purchase price thereof was the sum of $30,000.

The real property described in item No. 2 of the inventory and known as the "ranch property" was acquired in two separate transactions. The portion described therein as a portion of Lots 2, 3, and 5 in section 4 and all of Lot 7 in section 5, township 15 south, range 13 east was acquired by C. T. Gibson, a married man, on May 1, 1944, for a consideration of $4,000 and the remaining parcel was acquired by and title was vested in C. T. Gibson, a married man, on June 29, 1948. The consideration for this transaction was the sum of $1,500. The government bonds listed in item No. 3 were purchased by the decedent in 1941, 1942 and 1945 for a total sum of $43,024. The Spear promissory note described in item No. 4, appraised at $16,080, was apparently acquired by the decedent on September 6, 1951, and the note described in item No. 5 for $825.09 in September, 1949. The 1951 Pontiac automobile, valued at $1,750, and the Chevrolet coupé, valued at $1,000, were registered to appellant and decedent as legal and registered owners. The evidence does not show when the bank account referred to in item No. 6 was opened and the deposits therein were made. Apparently there was $10,974.77 in the account at the time the inventory was taken.

At the time decedent married Hallie Gibson in 1911 or 1912 he started a small secondhand store in Imperial. About a year later he acquired Lots 10 and 11 in block 74 of the city of Imperial and erected a building thereon in which he conducted a hardware and implement business. This property, together with the merchandise and equipment then on hand, was sold on June 5, 1945, for the sum of $7,000, less escrow expenses. The check therefor was made payable to C. D. Gibson and Carmen Gibson and the deed was executed by them. Testimony was introduced to the effect that decedent, while married to Hallie Gibson, bought out other implement stores, bought and sold cattle and hay, ran a theatre business, loaned money, operated a small ranch near Imperial and acquired the property known as the "bank building" and described in item No. 1 of the inventory.

There was substantial evidence from which the court determined that at the time of his marriage to appellant in 1926, decedent's stock of merchandise in the implement and hardware store was valued at the sum of $50,000 and that decedent had cash, notes and trust deeds of an undetermined amount which he kept in his safe. Decedent managed the implement store from 1926 to 1945 and after 1945 worked at the ranch. Apparently no books of account were available at the time

of the trial to show the actual income and expense of the various business transactions conducted by the decedent. His earnings and those of appellant were all deposited in a common bank account which was handled by them "altogether."

Appellant was employed as a teacher and during the time of her marriage to decedent her individual earnings amounted to $70,586.32. All of her earnings, commencing in 1927, were turned over by her to the decedent and all of the expenditures "on account of business and other matters" were made from the common bank account of appellant and decedent. The income tax returns for 1940 to 1951, inclusive, and referred to in the record, indicate that in addition to appellant's earnings the income consisted of interest, rentals, profits from business, and a small profit from farming operations. Decedent's earnings are not set forth. However, it is apparent that he was able to buy government bonds valued at $43,024 between October, 1941, and November, 1945, and other real and personal property.

The trial court, in arriving at its determination and judgment that $70,586.32 of the estate was community property and $48,067.54 was separate property found that the said sum of $70,586.32 was community earnings and the evidence amply supports the finding that this amount was earned by the appellant and contributed to the common bank account. The court then applied the presumption that the community expenses were paid out of the community property. Under the circumstances shown, we are of the opinion that the presumption was properly applied. ■ "It is presumed that the expenses of the family are paid from community earnings." (*Estate of Ades,* 81 Cal.App.2d 334, 338 [184 P.2d 1]; *Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708].) The trial court also applied the presumption that "where one dies possessed of property considerably in excess of community earnings, that the excess over community earnings after the deduction of community expenses is separate property." ■ In *Estate of Smith,* 86 Cal.App.2d 456, 473 [195 P.2d 842], where it was shown that the total value of deceased's estate far exceeded his community earnings, and further that there was change of title of much of the property from separate to joint and back to separate, and the family expenses and total community income was established, the court said:

"It is a well-settled presumption in such cases that the expenses of the family are paid from community earnings, and that the excess over community earnings less community

expenses is separate property. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Van Camp* v. *Van Camp*, 53 Cal.App. 17 [199 P. 885]; *Estate of Tompkins*, 123 Cal.App. 670 [11 P.2d 886]; *Estate of Ades*, 81 Cal.App.2d 334 [184 P.2d 1].)''

Applying these rules, the court properly concluded that the excess over the proven community earnings of $70,586.32 was separate property.

■ Appellant argues that all of the property listed in the inventory was her community property and that the presumption that where community property and separate property are commingled, the entire fund must be treated as community property if the separate funds have not been identified and that this presumption must prevail in the instant case. The record shows that the real property described in item No. 1 of the inventory was acquired by decedent prior to his marriage to appellant and the remaining property was acquired after this marriage. Whether the bonds or other property was acquired in whole or in part with separate or community funds is not clear. The real and personal property were acquired in decedent's name with the exception of the two automobiles and there is evidence that decedent had considerable property at the time of his marriage to appellant. As was said in *Estate of Smith, supra,* 472:

''There can be no doubt that most of the property here involved, at the start of the trial, was presumptively community property, for the reasons set forth by appellant. But the trial court has found that, in fact, it was separate property. The real question is whether there is 'satisfactory' evidence to support that finding, and that means not only direct evidence, but reasonable inferences from that evidence. It is obvious that this man died possessed of property valued far in excess of the money he earned during marriage. While most of the property was purchased with money from the joint account, the real question is the intent with which money from that account was later used to buy property taken in his name alone. The fact that most of the subsequently purchased property—the automobile and trailer and the Mariposa property, as well as the money in the safe deposit box and the money in the Fresno account—were placed in the separate name of decedent although paid for, in the main, with money from the joint account, is some evidence that the decedent intended it to be his separate property. While it is true that when the only evidence is that separate and community property are commingled, the entire fund must be treated as com-

munity if the separate funds have not been identified (*Fountain* v. *Maxim*, 210 Cal. 48 [290 P. 576]; *Falk* v. *Falk*, 48 Cal.App.2d 762 [120 P.2d 714]), that rule has no application where there is other evidence.''

Under the circumstances shown, the presumption is not here applicable.

Appellant argues that under the terms of the property settlement agreement entered into between Hallie M. Gibson and decedent in their divorce action, Hallie M. Gibson fell heir to the larger portion of the decedent's property and that the decedent was permitted to retain only the bank building, the implement and real estate business and bank stock; that decedent's investments were completely wiped out prior to 1935 due to the depression, the failure of the bank and other facts and circumstances recited in his affidavit in the divorce action; that the testimony of Hallie M. Gibson and Mr. Tarvin as to the property owned by the decedent was inconsistent with other statements made by them and therefore are of no probative value. The property settlement agreement was executed in 1924. In it decedent agreed to transfer real property in San Diego and Riverside counties to Hallie Gibson and she quitclaimed her interest in the bank property (Lots 11 and 12, Block 74, original townsite of Imperial) to decedent, as well as her interest in the real property described in item No. 1 of the inventory. She also waived any interest she might have in all personal property owned by the decedent. This personal property was not described in the agreement and there is no statement as to its value at that time. The affidavit of decedent filed in his divorce action was apparently filed in an effort to obtain a modification of a court order for support of his children, and while it indicates that decedent's bank investment became valueless, it does not contain a statement that his business was a complete failure. The evidence as to the terms of the property settlement agreement and the statements in decedent's affidavit were matters to be considered by the court in determining the weight to be given to the testimony of Hallie Gibson and Mr. Tarvin and the other evidence. ■ The finding of the trial court upon conflicting evidence will not be disturbed upon appeal if there is evidence of a substantial character which reasonably supports the judgment. ■ Likewise the conclusions of the trier of fact from evidence or testimony that is reasonably susceptible of conflicting or opposing inferences will not be set aside by an appellate tribunal. (*Potter* v. *Pacific Coast*

*Lbr. Co.,* 37 Cal.2d 592, 597 [234 P.2d 16].) ■ There was "substantial evidence" as defined in *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54], to support the trial court's finding that the decedent died possessed of property considerably in excess of the community earnings and to support its conclusion that the excess over the community earnings after deducting community expenses was separate property under the rule stated in *Estate of Smith, supra.*

Finally, it is argued that the findings are deficient for failure to state the probative facts. However, the principal issue was whether decedent's estate consisted of separate or community property and the court specifically found the amount of each. This was a sufficient finding on the material issue raised.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.