[L. A. No. 25956.   In Bank.   July 20, 1961.]

Estate of MEYER A. ARSTEIN, Deceased. GERTRUDE H. ARSTEIN, Petitioner and Appellant, v. UNION BANK, as Trustee, etc., et al., Objectors and Respondents.

Spar & Smith and A. Albert Spar for Petitioner and Appellant.

Albert E. Marks, Aaron Levinson, W. Alan Thody and Sydney J. Dunitz for Objectors and Respondents.

McCOMB, J.—This is an appeal from a portion of a judgment determining that the entire estate of appellant's husband, who died July 10, 1958, was his sole and separate property.

*Facts*: Meyer A. Arstein and appellant were married in Illinois in 1951. They moved to California the same year and resided here continuously until he died July 10, 1958.

Decedent's will left a bequest to appellant. She filed a petition for a determination of the nature and extent of the property in the estate, so that she could make an intelligent election whether to take under the will or to take her community property interest by law.

The trial court made the following findings: (1) decedent's net worth at the time of marriage was at least $438,918.93; (2) aggregate income during the marriage was $256,277.23; (3) separate income of decedent was at least $184,345.98; (4) community income during the marriage was a maximum of $71,931.25; (5) community living expenses during the marriage were at least $108,868.40.

Predicated upon the foregoing findings, the trial court found that the entire estate of decedent consisted of his separate property, since living expenses during the marriage exceeded community income.

*Questions*: First. *Are the trial court's findings (a) that decedent's net worth at the time of his marriage to appellant was at least $438,918.93 and (b) that the living expenses of decedent and appellant during their marriage were at least $108,868.40 supported by the evidence?*

*Yes.* ▇ When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. (*Primm* v. *Primm*, 46 Cal.2d 690, 693 [1] [299 P.2d 231].)

The reporters' transcript on appeal contains 334 pages, and 53 exhibits were introduced, including, among other things, check books, ledgers and income tax returns. We have examined the record and are of the opinion that there was

substantial evidence, considered in connection with such infer-
ences as the trial court could reasonably draw therefrom, to
sustain each and every material finding of fact upon which
the judgment is necessarily predicated. We therefore refrain
from further discussion of the evidence. (*Fomco, Inc.* v. *Joe
Maggio, Inc.*, 55 Cal.2d 162, 164 [10 Cal.Rptr. 462, 358
P.2d 918].)*

Second. *Did the trial court apply the proper rule of law
to the facts in the present case?*

*Yes.* ■ The record discloses that the source of all funds
was originally traced to the decedent's separate property at
the time of marriage. Under such a state of facts, the separate
property is given a fair return on the investment, and any
money in excess thereof is deemed attributable to the hus-
band's skill and effort and is therefore treated as community
property. (*Pereira* v. *Pereira*, 156 Cal. 1, 7 [103 P. 488, 134
Am.St.Rep. 107, 23 L.R.A. N.S. 880] ; *Margolis* v. *Margolis*,
115 Cal.App.2d 131, 135 [5a] [251 P.2d 396] [hearing denied
by the Supreme Court].) This rule the trial court properly
applied to the facts of this case.

■ The amount thus determined by the trial court to
be community income during marriage was substantially less
than the community living expenses. Consequently, none of
the estate left by decedent consisted of community property.
(*Estate of Ades*, 81 Cal.App.2d 334, 339 [5] [184 P.2d 1] ;
cf. *Thomasset* v. *Thomasset*, 122 Cal.App.2d 116, 127 [9] [264
P.2d 626].)

The property which decedent held at the time of his death
was different property from that which he held at the time
of marriage. Appellant contends that she is therefore entitled,
under section 164 of the Civil Code, to a presumption that such
property was community property. She further argues that,
under the rule laid down in *Estate of Adams*, 132 Cal.App.2d
190 [282 P.2d 190], the presumption controls, since due to
commingling it is impossible to trace decedent's separate
property.

*Estate of Adams* is not applicable here. In that case the
heirs of the wife, who had predeceased the husband by 10
years, claimed a share of certain residuary assets in the hus-
band's estate under section 228 of the Probate Code. The

---

*A summary of some of the evidence sustaining the findings of the
trial court is set forth in an appendix to this opinion.

presumption was that the property constituted the separate property of the husband.

The assets in question had been derived from substantial contributions of both community property and the husband's separate property. Therefore, the only way the wife's heirs could have rebutted the presumption was to trace community property into property in the estate of the husband. Under the circumstances there existing, however, the assets having been commingled in some 473 transactions, tracing was impossible, and accordingly the presumption controlled.

In the present case, on the other hand, the source of the funds was entirely the husband's separate property. There was a presumption that the funds constituted community property, but respondents rebutted the presumption by evidence that the total community income was less than the total community living expenses. Under the circumstances of this case, tracing was unnecessary.

The situation here was the same as that in *Estate of Ades, supra,* 81 Cal.App.2d 334, where it was said, at 339 [5]: "Evidence that there was no excess of community income over living expenses is as effective to prove that all assets of the estate are separate property as a specific showing from which separate source each asset flowed."

Affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied August 16, 1961.

### Appendix

The evidence shows that less than two months before decedent and appellant were married decedent received $546,665.79 on the sale of certain assets then owned by him, and after the date of the marriage received $98,018.44 on the sale of additional assets owned by him at the time of marriage, making a total of $644,684.23 received from the sale of assets owned by him at the time of, or immediately prior to, the marriage.

After the date of the marriage decedent paid a net income tax for the year 1951 of $105,765.30 and also paid the sum of $100,000 to his previous wife under the terms of a property settlement agreement.

It therefore appears that the amount realized by decedent on the sale of assets owned by him at the time of, or immediately prior to, the marriage exceeded the amount of the expenditures above referred to, which were chargeable against his separate property, by the sum of $438,918.93, the amount which the trial court found to be his minimum net worth at the time of marriage.

With respect to the estimated living expenses of decedent and appellant during the period of their marriage, a certified public accountant testified that under his supervision decedent's available check stubs for that period were examined; that adding machine tapes were taken of all items of a personal nature, that is, other than those which were clearly business or tax deductible items; and that such tapes showed a total of $108,868.40 expended for living expenses. He further testified that check stubs were missing for approximately 15 months during the period in question.

The following exhibits received in evidence also support the findings of the trial court: [See pages 244-247.]

Estate of Meyer A. Akstein (deceased)
Estimated Net Worth of Decedent as at
Date of Marriage (6/29/51) from Incomplete Rec

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Assets Per Income Tax Returns** | | | | | | | |
| From 1951 Income Tax Return | | | | | | | |
| Vulcan Iron Works | | | | | | | |
| Apex Steel & Supply | | | | | | | |
| Ceramet Laplin Properties | | | | | | | |
| | | | | | | | |
| From 1952 Income Tax Return | | | | | | | |
| Armco Steel Corp | | | | | | | |
| Chicago Milwaukee & St Paul RR | | | | | | | |
| General Motors | | | | | | | |
| New York Central RR | | | | | | | |
| Radio Corp | | | | | | | |
| US Steel | | | | | | | |
| | | | | | | | |
| From 1956 Income Tax Return | | | | | | | |
| US Steel | | | | | | | |
| | | | | | | | |
| From 1957 Income Tax Return | | | | | | | |
| Steele Gases | | | | | | | |
| | | | | | | | |
| Totals Per Income Tax Returns | | | | | | | |
| DEDUCT: | | | | | | | |
| 1951 Income Tax (assumed to have been paid after 6/29 | | | | | | | |
| Less Withholding tax deducted from 1951 salary, p | | | | | | | |
| sumably before 6/29/51 | | | | | | | |
| Amount Paid to Tillie Akstein (after 6/29/51) | | | | | | | |
| Tentative Total Net Worth Subject | | | | | | | |
| Items Listed Below | | | | | | | |
| | | | | | | | |
| **Possible Additional Assets at Date of Marr** | | | | | | | |
| (1) Cash Surrender Values in Life Insurance P | | | | | | | |
| (2) Cash Surrender Values in Endowment Polici | | | | | | | |
| (3) United States Bonds | | | | | | | |
| (4) Other Bonds and Stocks | | | | | | | |
| (5) Cash in Banks | | | | | | | |
| (6) Automobiles | | | | | | | |
| (7) Any portion of 1951 Income Taxes paid befor | | | | | | | |

| Date Acquired | Cost per Income Tax Returns | Selling Price per Fair Market | Difference Bet. Cost & Sell Price | (REVISED 7/9/__) | | | | |
|---|---|---|---|---|---|---|---|---|
| 1/11/51 | 431963 | 166579 | ⟨365384⟩ | | | | | |
| 4/1/46 | 9474761 | 50000000 | 419644539 | | | | | |
| 1944 | 2960000 | | | | | | | |
| 10/3/50 | 522000 | 1079433 | ⟨557467⟩ | | | | | |
| 1/1/51 | 244715 | 199592 | ⟨45231⟩ | | | | | |
| 6/26/51 | 1027785 | 1020391 | ⟨5172⟩ | | | | | |
| 1/1/51 | 2442200 | 200726 | ⟨414474⟩ | | | | | |
| 5/10/50 | 800700 | 947180 | 146682 | | | | | |
| 9/10/50 | 1182665 | 1221693 | 39028 | | | | | |
| 8/5/49 | 472600 | 2041890 | 1569290 | | | | | |
| 1948 | 880000 | 3691000 | 2811000 | | | | | |
| | 18342183 | 6446843 | 46126240 | | | | | |
| 10726290 | | | | | | | | |
| 1491760 | 10576780 | | | | | | | |
| | 10000000 | 20576780 | | | | | | |
| | | 43891895 | | | | | | |
| /51 | | | | | | | | |

ESTATE OF M. A. ARST'N (DECEASED)
ESTIMATED LIVING EXPENSES OF DECEDENT AND
YEARS 1951 TO 1958

SOURCE AND DESCRIPTION

BANK WITHDRAWALS FROM CHECKING ACCOUNTS PER
ADDING MACHINE TAPES OF CHECK STUBS AVAILABLE
ON JULY 29, 1959 (EXCLUDING TAX DEDUCTIBLE ITEMS
AND PERSONAL INCOME TAXES).

PERIOD

| | BANK | CHECK NOS FROM | TO | |
|---|---|---|---|---|
| BANK OF AMERICA | | | | |
| SUNSET & LAUREL BRANCH | 102 - 125 | 8/1/51 - 9/20/51 | | |
| HOLLYWOOD, CALIF. | 201 - 286 | 11/21/52 - 10/6/52 | | |
| | | | | |
| CALIFORNIA BANK | | | | |
| HIGHLAND & SANTA MONICA BRCH | 254 - 261 | 11/26/52 - 12/31/52 | | |
| HOLLYWOOD, CALIF | 262 - 300 | 1/1/53 - 3/19/53 | | |
| | 500 - 630 | 4/1/53 - 12/31/53 | | |
| | 631 - 820 | 1/1/54 - 12/31/54 | | |
| | 821 - 899 | 1/1/55 - 3/9/55 | | |
| | 901 - 972 | 8/5/55 - 12/3/55 | | |
| | 973 - 1124 | 1/1/56 - 9/31/56 | | |
| | 1385 - 1472 | 9/1/57 - 12/31/57 | | |
| | 1473 - 1534 | 1/1/58 - 7/1/58 | | |

TOTAL WITHDRAWALS BASED UPON AVAILABLE
CHECK STUBS

ADDITIONAL CHECKS ISSUED, POSSIBLY OF A PERSONAL NATURE:
(CALIFORNIA BANK (HOLLYWOOD STATE BANK) - MORTGAGE ACCOUNT
M. A. ARSTEIN

CALIFORNIA BANK (HIGHLAND & SANTA MONICA)
M. A. ARSTEIN
L. L. COLE / LES COLE
ROSE BLASH
HARRY FEUER
B & T SALES
IDA G. ALBUS
DOROTY AND/OR BERNIE ROTH

| 1952 | 1953 | 1954 | 1955 | 1956 | 1957 | 1958 | GRAND TOTAL |
|------|------|------|------|------|------|------|-------------|
| Mo. | Mo. | Mo. | Mo. | Mo. | Mo. | Mo. | Mo. |
| | | | | | | | (½) 201363 |
| ⅔ 487320 | | | | | | | (1½) 487320 |
| ¼ 57101 | | | | | | | (1¼) 57101 |
| | ⅔ 265104 | | | | | | (2⅔) 265104 |
| | 8⅔ 973284 | | | | | | (8⅔) 973284 |
| | | 12 1280588 | | | | | (12) 1280588 |
| | | | 7½ 693437 | | | | (7½) 693437 |
| | | | 4½ 464719 | | | | (4½) 464719 |
| | | | | 8 1050556 | | | (8) 1050556 |
| | | | | | 3½ 656520 | | (3½) 656520 |
| | | | | | | 6 861647 | (6) 861647 |
| 1⅚ 544421 | 11½ 1238388 | 12 1280588 | 12 1158156 | 8 1050556 | 3½ 656520 | 6 861647 | 69916 39 |
| | 1000000 | 575000 | 150000 | | | | 1725000 |
| | 200000 | | | | | | 200000 |
| | 374380 | 26500 | | 85000 | | | 485880 |
| | 70000 | 14000 | 14000 | 100000 | 40000 | | 510000 |
| | | 150000 | | | | | 150000 |
| | | | | 99521 | | | 99521 |
| | | | | 99800 | | | 99800 |
| | | | | | 625000 | | 625000 |
| 544421 | 2902768 | 2172088 | 1448156 | 1434877 | 1321520 | 861647 | 1082586 |