[Civ. No. 19940. First Dist., Div. Three. Dec. 13, 1962.]

M. B. McNEELY et al., Plaintiffs and Respondents, v. CLAREMONT MANAGEMENT COMPANY, INC., Defendant and Appellant.

**750**

Tinning & DeLap, Dana Murdock, Robert T. Eshleman, and Robert N. Sanford, Jr., for Defendant and Appellant.

John T. Knox and Herbert G. Hawkins for Plaintiffs and Respondents.

SALSMAN, J.—Claremont Management Company, Inc., hereinafter referred to as the defendant, built a house which was purchased by M. B. McNeely and Frances J. McNeely, his wife, hereafter referred to as plaintiffs. The defendant gave plaintiffs a written warranty to the effect that the house had been constructed in substantial conformity with plans and specifications approved by the Federal Housing Commissioner. By its terms the warranty called for notice of breach to be given "within one year from the date of original conveyance of title to such Purchaser(s) or the date of initial occupancy of the dwelling, whichever first occurs: Provided further, however, That in the event the Purchaser(s) acquired title to the captioned property prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given at any time or times within one year from the date of completion or initial occupancy of such dwelling, whichever first occurs." The warranty also contained the following: "*Notice to Purchaser*: ANY NOTICE OF NONCONFORMITY MUST BE DELIVERED TO THE WARRANTOR No LATER THAN *January 6, 1957*. (Warrantor shall insert

date one year from initial occupancy, date of conveyance of title or date of completion, whichever event is applicable.)'' A dispute between the parties relating to the scope of the warranty resulted in this suit and judgment in behalf of plaintiffs.

It appears from the evidence that prior to construction, plaintiffs and defendant entered into a subscription and purchase agreement, which provided for occupancy by plaintiffs on a rental basis. Plaintiffs first moved into the dwelling May 16, 1955 and took title on January 12, 1956. On January 14, 1956 plaintiffs served a notice on defendant asserting various deficiencies in the construction of the house. These items were adjusted by defendant. Later, on October 4, 1956, plaintiffs served a second notice on defendant claiming further deficiencies, but defendant refused to recognize this notice on the ground that the warranty period had expired. After trial the court found that, as to stated items, there had been a breach of warranty, and the judgment reflected the amount of money necessary to correct the defects.

On this appeal we are first confronted with a matter of procedure which defendant seeks to turn to its advantage. The question arises in this manner: The trial court attached to its findings a form of warranty which it erroneously took to be a copy of the warranty introduced in evidence. In fact it was not the warranty received in evidence, because the warranty attached to the findings fixed a cutoff date of May 16, 1956 for notice of breach, whereas plaintiffs' warranty, which was their Exhibit 10 in evidence, contained a cutoff date of January 6, 1957. Under the warranty received in evidence, plaintiffs' second notice was timely; under the warranty attached to the findings it was not. Defendant did not move for a new trial but took this appeal, and in its opening brief pointed to the obvious fact that plaintiffs' second notice was beyond the time limit fixed in the warranty attached to the findings. Plaintiffs then moved this court to correct the record by striking the warranty attached to the trial court's findings and substituting the warranty which was in evidence. We remanded the record to the trial court for further consideration, and the trial court corrected its record by removing the warranty originally attached to its findings and substituting therefor the warranty which had been introduced in evidence. ▮▮ Although defendant strenuously objected to plaintiffs' motion to correct the record, there can be no question concerning our authority to remand the record for

further consideration by the trial court. (Rule 12 (b) and (c), Rules on Appeal*; *Averill* v. *Lincoln,* 52 Cal.App.2d 398 [126 P.2d 398].)

After correction of the record defendant filed an amended opening brief and again contends that the warranty originally attached to the findings is controlling and determinative of the issue before us. This position is without support in the record. ▇ The warranty discussed by the witnesses and introduced in evidence as plaintiffs' Exhibit 10, and bearing a cutoff date of January 6, 1957, is the only warranty in issue because the form of warranty erroneously attached to the findings and concerning which there was no evidence or testimony whatever, simply does not exist in the appellate record, and no amount of insistence on the part of defendant can make it a proper subject of reference and discussion. *(Loving & Evans* v. *Blick,* 33 Cal.2d 603, 613, 614, 615 [204 P.2d 23]; *Estate of Hobart,* 82 Cal.App.2d 502, 509, 510 [187 P.2d 105].) We consider, therefore, that the only warranty between the parties is the one established by the evidence and attached to the court's findings in the record as corrected.

Defendant further contends that, even if the warranty dated October 15, 1955, with a cutoff date of January 6, 1957, be considered the applicable warranty, plaintiffs' notice of nonconformity served on defendant on October 4, 1956, is too late since it was given more than one year after plaintiffs' initial occupancy of the house, because occupancy, according to defendant, is the determining factor here as to the span of the warranty. This contention cannot be sustained. In the first place, under the facts of this case, it is not at all certain what the term "initial occupancy" means because when plaintiffs first moved into the house it was incomplete and a time limit based upon occupancy could not reasonably be held to apply to work not yet done. Moreover, plaintiffs' first occupancy was under an interim occupancy agreement under which plaintiffs paid rent, and it is not clear from the evidence that the warranty would apply to plaintiffs while they were in effect tenants, and had no title to the property. Of more significance, however, is the fact that defendant prepared the warranty in question, and filled in the blank spaces in the notice portion of the instrument with the date January 6, 1957. The language referring to initial occupancy of the house is found in the printed portion of the form, but all of

---

*Now California Rules of Court.

the blank spaces were filled in by defendant, including the date which fixed the time limit for the giving of notice of breach of warranty. Thus, the well recognized rule applies that where a general and a particular provision of a written instrument are inconsistent, the particular controls the general. (Code Civ. Proc. § 1859; *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914]; Restatement, Contracts, § 236(c). Also, where the provisions of such an instrument are inconsistent, the written or typewritten parts control the printed parts. (Civ. Code § 1651; Code Civ. Proc. § 1862; Restatement, Contracts, § 236(e).) Finally, since defendant is the party who prepared the warranty, it must bow to the decisive rule that the instrument must be interpreted most strongly against it since it is the party who caused the uncertainty to exist. (Restatement, Contracts, § 236(d); Civ. Code § 1654; *Taylor* v. *J. B. Hill & Co.*, 31 Cal.2d 373, 374 [189 P.2d 258]; *Estate of Rule*, 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319].)

 Applying these rules to the facts therefore fixes the date of January 6, 1957 as the final date upon which plaintiffs could deliver a valid notice of breach of warranty, as the trial court correctly decided.

 Defendant next argues the findings are unsupported by the evidence. Here it must approach its task in the light of long established rules delineated in such cases as *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P.1157], and *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]. Our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion of the trier of the facts. *(Estate of Arstein*, 56 Cal.2d 239, 240 [14 Cal.Rptr. 809, 364 P.2d 33].) Thus, we look to the record for substantial evidence, and we find it in abundance.

 Of utmost importance, and wholly destructive of defendant's contention at the outset, is the fact that the trial judge visited the house in question and made a detailed examination and analysis of all defects alleged in plaintiffs' notice of breach of warranty. What the court saw on its visit to the premises is evidence and is reflected in the court's memorandum decision and in the findings. Several witnesses testified about the claimed defects and gave estimates of the amount of money necessary to be spent to bring the various items up to the specifications. There was conflicting evidence

and testimony, but the trial court in its findings allowed some of plaintiffs' claims and disallowed others, and thus resolved these conflicts. From the brief recitation here of only a small portion of the record it is plain that substantial evidence supports the trial court's findings and judgment.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.