[Civ. No. 22366.   First Dist., Div. One.   May 20, 1966.]

RUSSELL C. PATTERSON, Plaintiff and Respondent, v. THELMA L. PATTERSON, Defendant and Appellant.

Cowan, Stone & Merrill and Douglas G. Cowan for Defendant and Appellant.

Breed, Robinson & Stewart and Robert Rosenberg for Plaintiff and Respondent.

SULLIVAN, P. J.—This is an appeal by defendant wife from an interlocutory judgment and decree of divorce. The issues confronting us concern the trial court's determination as to the community and separate character of the property of the parties and the disposition by the court of that property which it found to be community.

The parties were married on July 3, 1952 and separated on April 28, 1961. There are two children issue of the marriage, a girl born in 1953 and a boy born in 1956. Plaintiff was an automobile dealer and was also engaged in the car rental business. At one time he held a Hertz Rent-A-Car franchise in Berkeley, Monterey and Carmel. When the franchise was cancelled in the early part of 1959, he continued in the automobile leasing business under the name of Pacific Coast Leasing (Pacific Coast) using the equipment of the former business and further expanding the operation by increasing the number of his cars. According to plaintiff, Pacific Coast was not a new acquisition, he ''just simply changed the name'' and the new business ''just grew'' out of the old. Beginning in 1959 plaintiff's business operations were Pacific Coast and Russell C. Patterson Used Cars. At all material times they were sole proprietorship in form.[1]

After the parties were married Mrs. Patterson worked with plaintiff in his business for about two years. Beginning in 1956 she operated two businesses by herself: ''Country Hairdressers'' (later renamed ''Secrets of Beauty'') and ''Heaven to Eleven.'' Both were sole proprietorship in form.

The pleadings and pretrial conference order disclose that the issue as to the extent of the community property was in sharp dispute. Plaintiff alleged that there was none. Defendant alleged that there was substantial community property consisting of (a) the residence of the parties in Orinda; (b) household furniture and furnishings in said residence; (c) the Pacific Coast Leasing business operated by plaintiff in Berkeley; (d) an unimproved lot in Berkeley; (e) improved real property in Fort Collins, Colorado; and (f) life insurance on plaintiff's life, moneys in bank, securities and other property in the possession of plaintiff, the exact nature and value of which was unknown to defendant.

At the outset of the trial plaintiff reiterated his claim that there was no community property. During subsequent questioning he took the position that, while all of his business operations were his separate property, he considered all income from such business as community property and testified that he so informed Mrs. Patterson on many occasions.[2]

---

[1] In 1962 and after the trial commenced plaintiff organized Patterson, Cicero and Lind Corporation as a successor to Pacific Coast. This operation began on October 1, 1962, all new leases being made with the new company.

[2] In his brief on file herein, this pertinent testimony is construed thusly: ''Respondent denied the existence of such an agreement [making

Still later in the trial plaintiff, while under recross-examination, gave further testimony on this point which is rather confusing to us and indeed seems to have been unclear to the trial judge. While stating that he did not consider that there was any community property because it had no value, he also made statements which smack of concessions that at least some of the property was community in character. We set forth the pertinent testimony in the footnote[3] mindful of the rule under which we view the evidence in the light most favorable to the respondent. (See *Marshall* v. *Marshall* (1965) 232 Cal.App.2d 232, 236 [42 Cal.Rptr. 686] and cases there cited.) In any event the record is clear that plaintiff considered all *income* from his business enterprises to be community in character. Thus the trial court was not faced with the problem of apportioning profits from a business found to be the husband's separate property so as to allocate a fair return on the investment to the separate property and allocate any excess to the community property as arising from the husband's efforts. (*Pereira* v. *Pereira* (1909) 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]; *Estate of Arstein* (1961) 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d 33]; *Estate of Neilson* (1962) 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745]; *Margolis* v. *Margolis* (1952) 115 Cal.App.2d 131, 135 [251 P.2d 396].)

There was evidence as to Mr. Patterson's financial condition at the beginning of the marriage of the parties and also at the time of their separation as well as to his aggregate income over the intervening period of 10 years or more. Financial statements prepared by his accountant were received in evidence covering only Mr. Patterson's affairs for the above period of marriage and excluding Mrs. Patterson's business operations. The court also appointed a certified public accountant to audit the books of both parties. His report, including supporting

all his property community property] but conceded that he had agreed that the income derived from his separate property businesses would be community property."

[3] Plaintiff testified: "Even today I don't consider that when the property has no value that there is any community property on either side. . . . My statement to Mrs. Patterson, not once but a hundred times, was that I considered our home community property, I considered the rental business community property, that I considered the used car business community property, but not the properties, including the flat, the Berkeley Motors building, an interest in Berkeley Motors, I never, and I have told her a hundred times that was not community property. . . . Except for the investment that I had in the leasing business, which I drew and placed in the leasing business by selling property that was not community property."

schedules, the scope of which was confined to statements previously prepared by other accountants, was also received in evidence.

So far as is pertinent to this appeal, the court found that the only community property of the parties consisted of (a) an equity in their Orinda residence, (b) household furniture and furnishings in said residence and (c) a membership in the Orinda Country Club; that neither a certain unimproved lot in Berkeley nor the improved realty in Fort Collins, Colorado, was community property; that no business conducted by plaintiff was community property; that certain personal property stored in the family residence[4] was plaintiff's separate property; and that all other property described in defendant's cross-complaint was the separate property of plaintiff.

The judgment granted a divorce to each of the parties on the grounds of extreme cruelty and also provided that defendant was entitled to such divorce on the further ground of adultery.[5] The court awarded the Orinda residence to plaintiff and the household furniture and furnishings and the membership in the Orinda Country Club to defendant. It was further ordered that plaintiff satisfy and discharge within a reasonable time specified liens and encumbrances, including tax liens on the Orinda residence property, and thereafter transfer such property in trust for the children to vest in said children when the younger shall attain the age of 21 years, with the further provision that plaintiff pay all taxes assessed against the real property and the principal and interest of any loan against the property obtained for the purpose of discharging the above-mentioned liens and encumbrances.

Defendant first contends that the determination by the court that the automobile leasing business (Pacific Coast) was plaintiff's separate property is not supported by the evidence and is contrary to the evidence and the law.[6] This contention is

---

[4]This consisted of the following: ''a pool table, equipment and accessories; a leather chair and an ottoman; a monkeywood cocktail table; two office chairs; one red davenport; one television set; motion picture films and transparent slides.''

[5]The judgment also contained provisions for the support of the wife, the custody, support and maintenance of the children, use of an automobile by the wife, and for making the children irrevocable beneficiaries under the life insurance policies issued on plaintiff's life. These matters are not in issue on the instant appeal.

[6]Apparently this is an attack on three findings, numbers 7, 9 and 11. Finding 7 states that the *only* community property consists of the home, the furnishings and the golf club membership; finding 9 states that ''It

grounded on two general theories of argument: First, that plaintiff failed to meet his burden of tracing the source of such business to his separate property; and second, that additionally there was an agreement between the parties establishing such property as community property.

We dispose of the latter point first. Since the court determined that the only items of community property were those specified in its findings, it is obvious that it impliedly found there had been no transmutation of the leasing business into community property by agreement of the parties. This finding is of course conclusive upon us if supported by sufficient evidence or if it is based on conflicting evidence or on evidence susceptible of conflicting inferences. (*Estate of Arstein, supra,* 56 Cal.2d 239, 240; *Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 500-501 [4 Cal.Rptr. 618]; *Lovetro* v. *Steers* (1965) 234 Cal.App.2d 461, 470 [44 Cal.Rptr. 604].)

Defendant claims "that there is no conflict in the evidence that there was an agreement with regard to the status of the business as community property." In support of this statement defendant directs our attention to the following evidence: defendant's own testimony as to plaintiff's statements made to her in November 1959 at the time of their reconciliation following earlier divorce proceedings that "everything" including the leasing business was community property and that he had claimed otherwise in such proceedings "as a wedge" to get her back; testimony of Mrs. Hicks, the parties' housekeeper, that she overheard such or similar conversation between the parties during which plaintiff stated that "it's going to be all community property; what's for me is yours and will be built up for the children"; and plaintiff's testimony construed by defendant as a concession that "not once but a hundred times" plaintiff told her that the used-car and rental businesses were community property.

The above falls short of establishing defendant's thesis. The record reflects that plaintiff asserted there was no community property, that he denied ever telling defendant that she had a community property interest in the business, that he denied the crucial conversations relied upon by defendant, and that, although admitting he had agreed that the *income* from the business was to be community property, he had never told defendant the business *asset* itself was community property.

is not true that any business conducted by the plaintiff is community property"; and finding 11 states that "It is true that all other property described in the cross-complaint . . . is the separate property of plaintiff."

Although his pertinent testimony referred to by us (see fn. 3, *ante*) is not as clearly expressed as it might be, a fair and considered reading of the pertinent testimony as a whole indicates that plaintiff did not consider or agree that the *investment* in Pacific Coast was community property but only that the *income* therefrom was such. We are satisfied that the evidence on the issue was in conflict.[7]

We return to defendant's first point involving the tracing of the property. Here the argument runs as follows: "that the leasing business differed materially in nature, operation and value from the date of marriage to the date of [the final] separation"; that since plaintiff claimed the business as his separate property, he had the burden of tracing its source to separate property; and that a "mere mathematical computation of total net worth at the time of marriage and at the time of separation," while possibly a valid method in the case of a single continuous business entity, did not constitute a sufficient tracing of separate property in the present case.

The following rules apply:

■ (1) All property owned by a husband or wife before marriage and "that acquired afterward by gift, bequest, devise, or descent, with the rents, issues, and profits thereof" is the separate property of such spouse. (Civ. Code, §§ 162, 163; *Schecter* v. *Superior Court* (1957) 49 Cal.2d 3, 10 [314 P.2d 10] ; *Kenney* v. *Kenney* (1954) 128 Cal.App.2d 128, 135 [274 P.2d 951] ; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 498.) Such separate property "does not change its character as a result of the marriage nor by its mere use in the marital relationship." (*Kenney* v. *Kenney, supra.*) Nor does it lose its character as such merely because of a change in form or identity. (*Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 124 [264 P.2d 626].) ■ Property purchased with the separate property funds of a spouse ordinarily is the separate property of such spouse. (*Huber* v. *Huber* (1946) 27 Cal.2d 784, 791 [167 P.2d 708] ; *Thomasset* v. *Thomasset, supra.*)

■ (2) All property, except separate property as defined in Civil Code sections 162 and 163, acquired by either spouse during the marriage is community property and the burden is on the party seeking to establish that such property is in fact separate. (*Dimmick* v. *Dimmick* (1892) 95 Cal. 323, 327 [30 P.

---

[7]It is also noteworthy that Mrs. Hicks testified under cross-examination that just prior to the earlier separation and divorce proceedings she overheard conversations between the parties during which plaintiff asserted that the property was his separate property.

547] ; *Davis* v. *Green* (1898) 122 Cal. 364, 366-367 [55 P. 9] ;
*Rowe* v. *Hibernia Sav. & Loan Soc.* (1901) 134 Cal. 403, 405
[66 P. 569] ; *Falk* v. *Falk* (1941) 48 Cal.App.2d 762, 767 [120
P.2d 714] ; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d
116, 123 ; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 134 ;
*Price* v. *Price* (1963) 217 Cal.App.2d 1, 6 [31 Cal.Rptr.
350].) ▉ A presumption arises that the post-marital
property is community but this presumption may be overcome
by a preponderance of evidence. (*Thomasset* v. *Thomasset,
supra* ; *Kenney* v. *Kenney, supra* ; *Mears* v. *Mears, supra,* 180
Cal.App.2d 484, 498.) ▉ Whether or not the presumption
is overcome is a question of fact for the trial court. (*Pack* v.
*Vartanian* (1965) 232 Cal.App.2d 466, 470 [42 Cal.Rptr. 729] ;
see *Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.
Rptr. 87, 375 P.2d 55].) [8]

▉ (3) Even without agreement, separate property may
become community property as a result of being commingled
with the latter in such a manner as to make segregation impos-
sible. (*Falk* v. *Falk, supra,* 48 Cal.App.2d 762, 767-768 ;
*Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 135.) ▉ If
the property, or the source of funds with which it is acquired,
can be traced, its separate property character remains
unchanged. (*Huber* v. *Huber, supra,* 27 Cal.2d 784, 791 ; *Faust*
v. *Faust* (1949) 91 Cal.App.2d 304, 309 [204 P.2d 906] ;
*Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 124 ;
*Kenney* v. *Kenney, supra,* 128 Cal.App.2d 128, 135 ; *Estate of
McGee* (1959) 168 Cal.App.2d 670, 677 [336 P.2d 622] ; *Hicks*
v. *Hicks* (1962) 211 Cal.App.2d 144, 154 [27 Cal.Rptr. 307] ;
*Brown* v. *Meredith* (1963) 220 Cal.App.2d 762, 764 [34 Cal.
Rptr. 153].) ▉ But if separate and community property
or funds are commingled in such a manner that it is impos-
sible to trace the source of the property or funds, the whole
will be treated as community property upon the principle  that
the burden is on the party claiming property is separate
property to establish its character as such and that when he
fails to do so the presumption that it is community property is
controlling. (*Fountain* v. *Maxim* (1930) 210 Cal. 48, 51 [290

---

[8]It is said in *Thomasset*: ''There are expressions in the decisions to
the effect that the separate character of property acquired after marriage
is to be established by 'clear and convincing evidence,' 'clear and de-
cisive proof,' 'clear and satisfactory proof.' [Citations.] These ex-
pressions state a rule of evidence directed to the trial court; and if
that court finds that the evidence meets the rule, a reviewing court must
accept that determination as conclusive if there is substantial evidence
to support it. [Citation.]'' (122 Cal.App.2d at p. 123.)

P. 576]; *Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679, 683 [111 P.2d 641], cert. denied, 314 U.S. 612 [86 L.Ed. 492, 62 S. Ct. 87]; *Falk* v. *Falk, supra*; *Thomasset* v. *Thomasset, supra*; *Kenney* v. *Kenney, supra*; *Mason* v. *Mason* (1960) 186 Cal. App.2d 209, 212-213 [8 Cal.Rptr. 784].)

▮ (4) "It is presumed that the expenses of the family are paid from community rather than separate funds." (*Estate of Neilson, supra*, 57 Cal.2d 733, 742; *Huber* v. *Huber, supra*, 27 Cal.2d 784, 792 and cases there cited; *Estate of Ades* (1947) 81 Cal.App.2d 334, 338 [184 P.2d 1]; *Kenney* v. *Kenney, supra*, 128 Cal.App.2d 128, 136.) Absent any evidence showing a different practice, community earnings are chargeable with such expenses. (*Estate of Neilson, supra.*)

▮ Where there is no excess of community income over community living expenses, it may be properly concluded that the community property was consumed and that the remaining assets are the husband's separate property. (*Estate of Arstein, supra*, 56 Cal.2d 239, 241; *Estate of Neilson, supra*, 57 Cal.2d 733, 741-742; *Estate of Ades, supra*, 81 Cal.App.2d 334, 339; *Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 601-602 [250 P.2d 730]; *Thomasset* v. *Thomasset, supra*, 122 Cal.App. 2d 116, 127; *Estate of Gibson* (1954) 126 Cal.App.2d 534, 537-538 [272 P.2d 807]; *Estate of Updegraph* (1962) 199 Cal.App. 2d 419, 423 [18 Cal.Rptr. 591]; *Hicks* v. *Hicks, supra*, 211 Cal.App.2d 144, 161; *Price* v. *Price, supra*, 217 Cal.App.2d 1, 9; 4 Witkin, Summary of Cal. Law (1960) pp. 2733-2734.) In *Ades, supra*, it was said: "Evidence that there was no excess of community income over living expenses is as effective to prove that all assets of the estate are separate property as a specific showing from which separate source each asset flowed. [Citations.]" (81 Cal.App.2d at p. 339.) In *Neilson, supra*, it was said: "Similarly, when a husband purchases property during the marriage with funds of an undisclosed or disputed source, the presumption that the property is community may be overcome by evidence that community expenses exceeded the community income. In such a case, the husband *traces the source of the disputed property to his separate property by a process of elimination*: since all the community income was exhausted by family expenses the property must have been purchased with his separate funds. [Citations.]" (Italics added.) (57 Cal.2d at p. 742.)

Defendant contends, without citation of any authority, that the rule last set forth (number 4, *supra*) is not operative in the instant case where there are "varied businesses and varied

times of commingling.'' She argues that when some of plaintiff's separate property was commingled in Pacific Coast in 1960, the community interest in that business was then substantial, as is allegedly demonstrated by plaintiff's own financial statements furnished to a finance company to establish a line of credit for the purchase of automobiles.[9] Her argument runs as follows: That, according to the report of the court-appointed accountant Rinehart, the balance transferred from plaintiff's former business Hertz Drive-Ur-Self to Pacific Coast was $11,124.27; that plaintiff's own financial statements (see fn. 9, *ante*) showed that the Pacific Coast net worth (as distinguished from plaintiff's net worth) was $188,142.61 as of September 30, 1959, $295,906.81 as of June 30, 1960 and $195,925.79 as of December 31, 1960; that therefore when plaintiff made certain capital additions to the business from his separate property in 1960,[10] there must have been a substantial community interest in the business since there was a business net worth in excess of the assets commingled; and that there is no reason to charge the subsequent unexplained dissipation of Pacific Coast net worth wholely to the community. Asks defendant: ''How then can this interest [i.e., community interest in 1960] cease to exist in the year following up to the time of separation [August 28, 1961]?''

Defendant offers neither citation of authority nor analysis of pertinent decisions in support of her position that the rule in question is subject to her claimed limitation. Indeed all in all she ignores the rationale of the cases upholding the rule. These make clear, we think, that when during the course of the marriage community income has been consumed in community living expenses it logically follows that the parties could not have acquired capital assets which were community property. As a corollary, if such income has been consumed in community living expenses and in the acquisition of ascertainable community assets, it also logically follows that the parties

[9]Defendant called the witness Blasse, office manager of Yellow Manufacturing Acceptance Corporation who produced, pursuant to subpoena duces tecum, eight financial statements of plaintiff's personal and business assets received in evidence as defendant's Exhibit C stating among other things plaintiff's total net worth as of the following dates: September 30, 1956 ($282,759.86); December 31, 1958 ($325,270.25); June 30, 1959 ($350,650.39); September 30, 1959 ($362,178.19); June 30, 1960 ($468,878.88); December 31, 1960 ($414,076.89); May 31, 1961 ($235,895.22]; and December 31, 1961 ($247,163.67).

[10]According to the court's Exhibit No. 1 prepared by Mr. Rinehart, $92,500 in capital additions to Pacific Coast were traceable to property established by the evidence to have been plaintiff's separate property.

could not have acquired *other* capital assets as community property. Basically, as the court stated in *Neilson,* the rule effectuates a tracing of the source of the disputed property by a process of elimination. Contrary to defendant's claim, then, the rule is applicable irrespective of whether the asset in dispute may have existed in various forms or have been the subject of diverse acts of commingling at various times. Thus in the *Estate of Arstein, supra,* 56 Cal.2d 239, 241, the court observed that the ''property which decedent held at the time of his death was different property from that which he held at the time of marriage.'' In *Price* v. *Price, supra,* 217 Cal.App. 2d 1, the husband's business increased in value six-fold after 24 years of marriage, the increase being ascribed to various separate property investments over the period and there being no excess of community income over community living expenses. We conclude that the rule under attack is properly applicable to the instant case and proceed to inquire whether in the light of it there is sufficient evidence to support the trial court's determination that Pacific Coast was plaintiff's separate property.

Plaintiff contends that sufficient supporting evidence is found in the reports of his financial condition prepared by his accountant D. A. Sargent & Co.[11] and the explanatory testimony of Mr. Sargent in connection therewith. In essence the crucial part of this evidence upon which plaintiff relies consists of a comparison of Mr. Patterson's net worth as of December 31, 1951 with his net worth as of December 31, 1962[12] and an analysis of such net worth in connection with his income over such 11-year period. The financial statements related to Mr. Patterson's net worth, exclusive of Mrs. Patterson's business operations. The pertinent part of this net worth analysis is summarized in the footnote.[13] Plaintiff argues that ''Thus, the living expenses of the parties exceeded the community income . . . and after giving allowance for the purchase of the assets found to be community property, it is clear that only Respondent's separate property remained.'' He

[11]Both reports were received in evidence as plaintiff's Exhibits 1 and 3. The second report (Exhibit 3), which made certain corrections and adjustments, is the one focused upon by plaintiff herein.

[12]The case went to trial on May 22, 1962 and was continued from time to time for the taking of further testimony. Both sides rested on October 11, 1963.

[13]The following is a summary of the pertinent part of a loose-leaf insert of plaintiff's Exhibit 3 entitled ''Russell C. Patterson, Comparison of Net Worth—Book Values, December 31, 1951 with December 31, 1962.''

maintains that the foregoing evidence, together with his own testimony with respect to income and expenditures over the period as well as other evidence to the effect that "the parties lived on a very high scale," satisfies the rule heretofore referred to.[14]

Does it appear from the foregoing or any other evidence in the record that there was no excess of *community income* over *community living expenses* so as to make the rule under discussion operative in plaintiff's favor? If this has not been shown, then the process of elimination referred to in *Neilson, supra,* must fail and it cannot be concluded that the asset in dispute (Pacific Coast) can be traced only to separate property sources. Clearly the evidence shows *community income* in the amount of $191,775.58 over the 11-year period. But what does it show as to *community living expenses*? Neither the report nor the testimony of plaintiff's accountant established the amount of such expenses. Neither plaintiff's Exhibit 3 nor the court's Exhibit 1, on both of which plaintiff declared his reliance at oral argument, contains any schedule or summary of expense items other than a list of checks issued by plaintiff as advances to defendant's business operations (see fn. 13, *ante*).[15] Indeed, plaintiff's Exhibit 3 notes its exclusion of any other expense items.[16] Therefore the final

| | | |
|---|---|---|
| Net worth at date of marriage to Mrs. Patterson | | $190,193.76 |
| *Plus* annual income for years 1952-1961 inc. | | 191,775.58 |
| Exclusive of Mrs. Patterson's operations, and capital gain on prior December 31, 1951 real estate | $54,373.47 | |
| *Less* federal and state income tax thereon | 14,564.00 | 39,809.47 |
| | | $421,778.81 |
| *Less* checks to Mrs. Patterson for advances to her business operations | | 50,096.10 |
| | | $371,682.71 |
| *Less* Net Worth—December 31, 1961 | | 163,334.83 |
| Apparent Living Expenses—10 years (In excess of taxes and interest on home deducted for income tax purposes) | | $208,347.88 |

[14]Plaintiff relies on *Arstein, Price, Hicks* and *Ades.*

[15]Plaintiff's Exhibit 3 contains only four exhibits: (a) a statement of financial condition at December 31, 1951; (b) a summary of annual income 1952-1961 inclusive; (c) a statement of financial condition at December 31, 1961; and (d) a list of checks issued as advances to defendant's business operations.

[16]In pertinent part, Exhibit 3 states: "To attempt an analysis of ten years of withdrawals of the two parties would consume many days

item of $208,347.88 noted in the comparison of net worth (Exh. 3—loose page) denominated *"Apparent* Living Expenses" (italics added) is not an audited figure but merely the result of a mathematic computation which "appears" to represent living expenses. It does not even state that the amount "appears" to represent *community living* expenses. It is noteworthy that the above figure is nowhere found *in* the report or exhibits to which plaintiff's *certified* public accountants have affixed their signatures.

Plaintiff seems to recognize the insufficiency of such evidence for in his brief he also relies on his own testimony as to his income and expenditures. When we made inquiry at oral argument as to evidence supporting the amount of community living expenses, plaintiff's counsel directed us to specific portions of plaintiff's own testimony stating that these portions established community living expenses totalling approximately $264,000. We have carefully examined these portions as well as the record as a whole.

Plaintiff did not testify as to the amount of community living expenses during his case in chief. During the case in defense plaintiff was examined by defendant's counsel pursuant to Code of Civil Procedure section 2055 and was thereafter examined by his own counsel. In the course of the latter examination plaintiff testified in substance as follows: that he had prepared from his records a list showing his income and expenses from January 1, 1952 to December 31, 1961 and from January 1, 1962 to September 30, 1962. "Now, I have that figure in two different items here. I have from January 1, '52 to December 31, 1961. I have that figure for ten years, which is $264,786.37, which I have all the checks, checkstubs and bank statements, to be audited. MR. COLLINS [Plaintiff's Attorney]: Q. But those are your expenditures, is that right? A. Those are the personal expenditures, not business."[17] The list to which plaintiff referred was not offered in evidence. Subsequently during recross-examination defendant's counsel questioned plaintiff as to this list but plaintiff's answers nowhere disclose what portion of the $264,786.37 previously

of detail work. To classify those withdrawals in detail could only be a very costly operation, confusing, and of little avail.''

[17]During plaintiff's testimony on this subject the following occurred: "MR. TOOMAJIAN [Defendant's Attorney]: As I understand, Your Honor, there is a motion I believe pending for an audit following a determination of this case. There is no way I can reach these figures. It would seem to me if the Court is going to appoint an auditor for a determination, that would be the best evidence.''

testified to as "personal expenditures, not business" were *community living* expenses.[18]

The record clearly shows that the asset in dispute (Pacific Coast) represents a commingling of separate and community property. There is some evidence (found in court's Exhibit 1) tracing the source of Pacific Coast to separate property of plaintiff totalling $103,624.27 but this does not trace the source of the *entire* asset. The burden was on plaintiff to establish the character of the entire asset as his separate property, for such was his claim. (See *Fountain* v. *Maxim, supra,* 210 Cal. 48, 51 and other cases cited *supra.*) He sought to accomplish this by a process of elimination showing that there could not be a community interest in the asset because community living expenses exceeded community income. As we have explained, the evidence does not support such finding of "excess." It was proved neither by audit nor by competent testimony independent of audit. ▮ Community living expenses are not the same as "total expenses" or "personal expenditures, not business." The term "community living expenses" means "the expenses of the family." (*Estate of Neilson, supra,* 57 Cal.2d 733, 741-742.) The broader scope of "personal expenditures, not business" is, in the instant case, pointed up by evidence of plaintiff's expenditures in connection with his romantic involvement with another woman. The trial court erred in determining that the leasing business (Pacific Coast) was the separate property of Mr. Patterson. Since the nature and extent of the community or separate interests of the parties therein cannot be determined on the present record as a matter of law, such issue must be retried.

Additionally, both parties herein agree that there is no evidence to support the award of the motion picture films and transparent slides to plaintiff. (See fn. 4, *ante.*) Although

---

[18]"Q. [By Mr. Toomajian, Defendant's Attorney] These total of checks made payable to Mrs. Patterson for personal and household expenses is over a period of time that you and she lived together, is that right? A. That's correct. Q. Does this show any of your expenses? A. No. Q. This includes your living, your expenses that you might have, or entertainment, or whatever it is, is that right? A. No. There is probably another $30,000 on there where I paid the bills myself. Q. Why isn't that reflected? A. It is, in your last paragraph. Q. This is your living in 'Miscellaneous expenses,' is that right? A. No, that is for both of us. That is for trips and for Christmas, travel, doctors, dentists, all miscellaneous stuff. It is not separated. Q. These are your living expenses from the time you were married to the time you separated, is that what you mean? A. The two items combined are. Q. This is the standard that you have lived in? A. It is the standard, yes, that——"

plaintiff conceded that the judgment might be modified by awarding said articles to both parties equally, this concession seems to have been made on the condition that the judgment would be affirmed. The issue as to the separate or community character of these articles should also be retried.

Defendant's second main contention on appeal is that since each of the parties was granted a divorce, the division of community property made by the court was unequal and therefore contrary to law. It is obvious that the retrial of the issues relating to Pacific Coast and the films and slides may require the court to redetermine the division of community property. However, independent of such consideration, we have concluded that defendant's second contention should be sustained.

Recently in *Hong* v. *Hong* (1965) 237 Cal.App.2d 239, 240 [46 Cal.Rptr. 710] we set forth the applicable rule for the division of community property quoting from the leading case of *De Burgh* v. *De Burgh* (1952) 39 Cal.2d 858, 874 [250 P.2d 598] as follows: "Section 146 of the Civil Code provides that if the divorce is granted for extreme cruelty, the court may apportion community property as it deems just, but that statute has been interpreted to permit an award of more than half of the community property only to an innocent spouse. [Citation.] When a divorce is granted to both parties, neither is innocent within the meaning of this rule, and the community property must be equally divided." (See extensive citations in *Hong* v. *Hong, supra.*) We also said in *Hong*: "Where the court is required to make an equal division of the community property it should not attempt such a distribution without first ascertaining the value of the respective items to be divided. [Citations.] Similarly the court cannot provide a specific payment in lieu of one spouse's community interest in property without ascertaining the value of that property. [Citations.]" (P. 241.)

As previously stated, the court found that the only community property was the following: (a) an equity in the Orinda residence; (b) the household furniture and furnishings; and (c) the Orinda Country Club membership. However, it made no finding as to the value of any of the foregoing items. It concluded that item "a" should be awarded to plaintiff "subject to the condition that he discharge those existing encumbrances and the tax liens for which he is liable and thereafter convey the same in trust for the minor children" and that items "b" and "c" should be awarded to defend-

ant. Award of the same was made accordingly in the judgment. We must therefore determine in the absence of express findings of value whether the evidence is supportive of an implied finding that the community property was divided equally. (*Hong* v. *Hong, supra,* 237 Cal.App.2d 239, 243.)

The parties agree and the evidence shows that the gross value of the residence was $65,000. According to plaintiff's Exhibit 3, the encumbrance against it was $8,121.91 and the value of the equity was $56,878.09. According to Mrs. Patterson's testimony, which plaintiff accepts on this point, the federal and state income tax liens amounted to $31,982.75. Deduction of these liens would reduce plaintiff's equity to $24,895.34. Plaintiff's Exhibit 3 also shows the equity in the household furniture and furnishings to be valued at $7,000 ($12,000 less $5,000 owing). ▇▇ Thus at least on this record plaintiff's net award would appear to be $24,895.34 as compared with defendant's net award of $7,000 plus the value of the country club membership. Neither of the parties has directed our attention to any evidence in the record bearing upon the value of the last item and our careful examination of the record has failed to disclose any. This hiatus alone prevents any determination that the court's award constituted an equal division of the community property. Without some equalizing value for the item, the rest of the award as above indicated is in marked imbalance. We cannot say that the evidence considered in the light favorable to plaintiff supports an implied finding of equal division of the community property. On remand the court should ascertain the value of the items of community property to be divided between the spouses and make an equal division thereof in accordance with the rules heretofore set forth.

We make an additional observation for the guidance of the trial court on remand. It is obvious that the provisions in the interlocutory judgment requiring plaintiff to transfer the Orinda residence in trust for the benefit of the children amounts to an award of community property to the children. ▇▇ An award of community property to persons other than the spouses themselves is not authorized by Civil Code section 146. We sense the trial court's commendable solicitude for the children in this order and, while we withhold approval of any such disposition of community property, observe that it might have been sustained upon the basis of plaintiff's consent thereto, had defendant in fact received an equal share of the community property. Nevertheless, a caveat

is in order that such type of award presents the risk of error assertable on appeal.

It is unnecessary to consider defendant's remaining contention pertaining to certain findings of fact.

Although we conclude that the judgment must be reversed insofar as it relates to the determination of the separate or community character of the leasing business and the motion picture films and transparent slides, and as it relates to the division of the community property, we do not find, nor do the parties claim, any such interdependence between the foregoing and the remaining portions of the judgment so as to require our reversal of the latter also.

The interlocutory judgment and decree of divorce is reversed as to those portions thereof determining the existence and extent of community property and making a division thereof; and the cause is remanded for a new trial for the purpose of determining the separate or community character of only (a) the automobile leasing business (Pacific Coast) and (b) the motion picture films and transparent slides; and for the further purpose of determining the value of all items of community property and of thereafter making an equal division of the community property under the directions and in conformity with the views herein expressed; in all other respects said interlocutory judgment and decree is affirmed. Appellant shall recover costs on appeal.

Molinari, J., and Sims, J., concurred.