[Civ. No. 67213. Second Dist., Div. Five. Oct. 6, 1983.]

In re the Marriage of WINIFRED MEYER and JOHN D. STONER.
WINIFRED MEYER STONER, Appellant, v.
JOHN D. STONER, Respondent.

**COUNSEL**

Rosky, Landau & Fox and Jacqueline Fox for Appellant.

Lewis Metzinger for Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—Appellant, Winifred Meyer Stoner (hereinafter wife), seeks reversal of the trial court's judgment regarding allocation of the community property interest in certain residential property. Wife contends the awarding of a 76.1 percent interest in the residence to the community in light of its finding that the real property itself was the separate property of wife was reversible error. We agree, and reverse accordingly.

### FACTS

Wife and John Stoner (hereinafter husband) were married March 26, 1975, in Washington, D.C. The two had lived together at wife's home in Ohio several years prior to their marriage. Both settled in Ohio shortly after the marriage. Wife was employed as a physician at a salary of $40,000 per year. Husband was unemployed during the marriage. The Ohio house as well as other property and automobiles were all purchased by wife prior to the marriage.

Four months after the marriage, wife quit her job. The two moved to California in October of 1975 for purposes of furthering her career.

In October of 1975, wife sold the Ohio residence and used the monies received from the sale of the house ($14,240.86) as a down payment towards the $59,440.86 total purchase price on a new residence located in California. Escrow opened in late August 1975, approximately four months after the marriage, and escrow closed in October of that year. Wife applied for a loan in her own name for the balance of the purchase price. Husband, in turn, executed a quitclaim deed on this property to wife at the time of the loan. The loan request was granted and title in the property was taken in wife's name, as "a married woman [and] as her sole and separate property."

The parties continuously resided in the California house from October 1975 until their separation on March 20, 1979. During the period of the marriage up until the date of separation, the principal on the loan was reduced by $1,116.96. Payments were made from community funds. In February 1978, a second loan in the amount of $15,000 was executed by wife to repair flood damage. The $15,000 was placed in a joint bank account.

The parties thereafter separated and a dissolution was granted on September 11, 1980. The proceeding was bifurcated as to all issues other than dissolution of the status of the marriage. A hearing as to those reserved issues concluded in July 1981.

### EXECUTION OF THE QUITCLAIM DEED

Husband quitclaimed his interest to the property on August 29, 1975.[1] Said deed filed on October 17, 1975, states that for valuable consideration received and acknowledged, husband hereby remises, releases and forever quitclaims to wife, as her sole and separate property, said real property.

Husband contends he executed the quitclaim deed not knowing the import of his action, yet believing it necessary to aid in financing the newly purchased property.[2] He testifies that an express agreement was entered into with wife providing that once the house was occupied, they would transfer title into both names. Thus, while husband allegedly had no knowledge of the effect of the quitclaim deed, he was aware that title to the property was to be in his wife's name alone as her sole and separate property. Husband's

---

[1]This is the same date that escrow opened.

[2]Apparently, husband's credit rating was less than satisfactory and he felt it necessary to have title to the property in wife's name only in order to obtain proper financing.

claim of an express agreement is refuted by the court's express finding that no agreements, either oral or written, existed between the parties.

Wife testified that husband signed the quitclaim deed because it was assumed between the two that this was to be her sole and separate property. There was also testimony to the fact that husband originally objected to the purchase of the house and that he failed to appear at the closing of escrow because it was known that the property was wife's sole and separate property.

At the hearing, wife contended that the residence was her sole and separate property. Husband argued that some portion of the residence was community property. The trial court concluded that the residence was the sole and separate property of wife. More specifically, the court found the down payment of $14,240.86 to be the separate property of wife, thus giving wife a 31.4 percent separate property interest in the property; that the $15,000 note secured by the second deed of trust obtained in 1978 to repair flood damage is the separate obligation of wife and the interest created thereby entitles her to a 7-1/2 percent interest of the current appraised value of the property to reflect the interest created by the $15,000 obligation. The court also determined that the note secured by the first deed of trust was the separate obligation of the wife but that the loan had been acquired based upon community credit. As a result, the court concluded that the community was entitled to a 76.1 percent interest in the current appraised value of the property based on the fact that community credit was used to obtain the separate obligation. The sum of $96,302.62 was awarded to the community.

DISCUSSION

■■ "All property owned by a husband or wife before marriage, and 'that acquired afterwards by gift, bequest, devise or descent, with the rents, issues, and profits thereof,' is the separate property of the acquiring spouse. (Civ. Code, §§ 5107, 5108; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610 . . . .) Property purchased with separate property funds is likewise the separate property of the acquiring spouse. (*In re Marriage of Mix, supra,* at p. 610.) Such separate property does not change its character as a result of the marriage or of its mere use in the marital relationship. (*Patterson* v. *Patterson* (1966) 242 Cal.App.2d 333, 340 . . . .) Nor does separate property lose its character as such merely because of a change in form or identity. (*Id.; Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 124 . . . .)

"If property is separate at the time of its acquisition, 'it remains so with the exception of such increase thereof as may have been due to the contri-

bution of the community by virtue of capital or industry.' (*Thomasset* v. *Thomasset, supra,* at p. 123.)

"There is a statutory presumption that property acquired by either spouse during marriage is community. (Civ. Code, § 5110; *See* v. *See, supra,* 64 Cal.2d 778 at p. 783.) This presumption is rebuttable (*In re Marriage of Mix, supra,* at p. 611), and it may be overcome by a preponderance of evidence. (*Patterson* v. *Patterson, supra,* 242 Cal.App.2d 333 at p. 341.) Whether or not the presumption has been rebutted is a question of fact for the trial court (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 . . .), and its findings must be upheld if supported by substantial evidence. (*In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 742 . . . .) The form of the instrument under which the parties hold title is not conclusive of the status of the property. (*Gudelj* v. *Gudelj, supra,* at p. 212.)" (*In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 454-455 [152 Cal.Rptr. 668]; disapproved on other grounds. See *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].)

Wife contends the court erred in awarding a 76.1 percent interest in the residence to the community while finding the real property itself to be her sole and separate property. She insists the formula as set forth in *In re Marriage of Moore* (1980) 28 Cal.3d 366, 373 [168 Cal.Rptr. 662, 618 P.2d 208] should have been applied by the trial court. *In re Moore* is clearly distinguishable. *Moore* concerned the proper method of calculating the interest obtained by the community as a result of payments made during marriage on an indebtedness secured by a deed of trust on a residence purchased by one of the parties *before* marriage. (*Id.,* at pp. 369-370.)

■ The determinative question presented here concerns the nature of the loans executed by wife for the purpose of satisfying the balance of outstanding debt on the house, the $15,000 second deed of trust executed by wife for the purpose of making subsequent repairs, and the effect of husband's quitclaim of his total interest in the property to wife.

The record reveals that the initial source of funds for the down payment on the California residence was $14,240.86 of wife's separate property funds. Said funds were the result of the sale of wife's Ohio residence. There is no evidence that at the time the funds were used for the down payment, a gift was intended. This is supported not only by the trial court's finding, but by the undisputed fact that title was taken in wife's name alone, as her sole and separate property.

■ In regards to the $45,200 loan for the balance secured by a first deed of trust, "The character of [the] property acquired upon credit during mar-

riage is determined according to the intent of the lender to rely upon the separate property of the purchaser or upon a community asset." (*In re Marriage of Aufmuth, supra,* 89 Cal.App.3d at p. 455.)

▮ A presumption exists that the proceeds of a loan acquired during marriage are community property. Said presumption is rebuttable upon a showing that the loan was extended on the faith of existing property belonging to the acquiring spouse. (See *Estate of Abdale* (1946) 28 Cal.2d 587, 592 [170 P.2d 918]; *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d at pp. 455-456.)

▮ In the instant case, the trial court found the note secured by the first deed of trust to be the separate obligation of wife. The court also concluded that wife's separate property credit status became a community property credit status after the marriage and that the community property salary of $1,750 per month was used to secure the loan. The logical presumption arising, therefore, is that the loan, as originally secured, was community property in its character. Therefore, the community has a *pro tanto* interest in such property established by finding the ratio of payments on the purchase price made with community funds versus the payments made with separate funds. (*In re Marriage of Moore, supra,* 28 Cal.3d at p. 372.) This presumption was, of course, rebutted by the quitclaim deed executed by husband and the community obtained no interest. (*See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776].)[3]

With regards to the second loan of $15,000 obtained for purposes of flood repairs, the court determined that said loan, secured by a second deed of trust on the property, was also the sole and separate obligation of wife. This obligation, and payments thereon, is subject to the same principles as the initial purchase loan.

Since wife has maintained the separate and sole obligation on the two notes, and the realty had been quitclaimed to her as separate property, there is no proportionate community interest created in the property.

While it is true that no oral or written agreements are evidenced in the record, husband's action in executing the quitclaim deed is sufficient evidence that a transmutation of his community interest in the property resulted and the permissive use of community funds to reduce the notes were gifts of husband to wife's separate property. Consequently, based on our review

---

[3]We recognize that in *See*, the gift was of separate property; however, the same principle applies to a gift of the community property interest of the community's income.

of the record in toto, we hold that said property is wife's sole and separate property.

The judgment as to allocation of community interest is reversed and a new order is directed to be entered in conformity with this opinion; otherwise, the judgment is affirmed. Costs to appellant.

Ashby, J., and Hastings, J., concurred.