MARIETJE VANDER RIET, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riet v. Commissioner
Docket No. 2442-87
United States Tax Court
T.C. Memo 1989-494; 1989 Tax Ct. Memo LEXIS 497; 58 T.C.M. (CCH) 110; T.C.M. (RIA) 89494; September 7, 1989
Marietje Vander Riet, pro se. Laura C. Karlak, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a $ 10,937 deficiency in petitioner's Federal income tax for calendar year 1982 based upon the disallowance of a theft loss deduction. Petitioner claimed a $ 77,800 theft loss deduction on her 1982 Federal income tax return for the following: (a) Cash
$  4,500
(b) Cash (Deeds of Trust)
61,000
(c) Jewelry
9,400
(d) Fur coat
3,000
Total
[1] $ 77,900
At trial, petitioner conceded that the jewelry and the furs would not be claimed as a theft loss and respondent conceded that $ 3,500 of the $ 4,500 cash claimed by petitioner as a theft loss would be allowed. After concessions, we must decide whether petitioner sustained a $ 61,000 deductible theft loss in 1982. FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein *499 by this reference. At the time of filing her petition, petitioner resided in Westminister, Calif.
In the early part of 1979 petitioner met Gerald Losey (Losey). Losey and petitioner became friends and planned to marry. On April 19, 1979, Losey, while living in petitioner's house, received a letter from a Robert A. Kimm, an attorney in Iowa. Mr. Kimm was representing a Dorothy Losey in a divorce action against Gerald. Petitioner had not known, until the letter arrived, that Losey was not legally divorced. Losey assured her that the divorce would be final by the time they were to be married. On July 14, 1979, petitioner, under the false belief that Losey's divorce from Dorothy was final, married Losey. However, on September 26, 1979, petitioner realized that Losey's divorce was not final and that she was not legally married to him. Between the time that petitioner met Losey and the time of their bigamous marriage, petitioner expended in excess of $ 12,000 paying off Losey's outstanding debts. On March 6, 1980, petitioner and Losey jointly obtained, from the Security Pacific National Bank, a $ 15,000 loan for the specific purpose of starting a carpentry business. In conjunction *500 with this loan a deed of trust, signed by petitioner, was taken out on her separately owned real estate, located in Huntington Beach, Calif. The proceeds were used to lease a building and to purchase tools and machinery. On March 14, 1980, petitioner and Losey were legally remarried. Shortly thereafter, petitioner fell ill to cancer and required hospitalization. After petitioner was released from the hospital she found the business was deep in debt and failing, so she proceeded to close it down. By August 22, 1980, the business debts were still unpaid and petitioner had no money to support herself or her children, so petitioner and Losey jointly obtained a $ 20,000 loan from Allied Home Loan Company. In conjunction with this loan, petitioner took another deed of trust out on her real estate, but this time it was signed by petitioner and Losey. Of the $ 20,000 loan proceeds, $ 4,000 was withheld to pay off a prior, unrelated, judgment on the property and approximately $ 3,577 was withheld as payment for the loan transaction fees. The remaining $ 12,421 was used by petitioner to pay off business and personal obligations. In February of 1981, Losey encouraged petitioner *501 to purchase a Datsun 280ZX for herself. On February 19, petitioner and Losey jointly obtained a $ 26,000 loan for the purpose of purchasing the 280ZX and another 1981 Datsun. In conjunction with this loan, and for the third time, a deed of trust was taken out on petitioner's real estate with both petitioner and Losey signing it. The $ 21,236.20 proceeds, remaining after the withholding of the loan transaction fees, were not given directly to petitioner or Losey, but rather were paid directly to a Dick Barbour, a car dealer. The 280ZX was fully paid for with approximately $ 19,000, and the remainder of the proceeds was used as a down payment on another 1981 Datsun. Although the 280ZX was titled in both their names, both petitioner and Losey intended the car to be petitioner's sole property. However, allegedly for petitioner's convenience Losey arranged that the car could be sold or transferred by either petitioner or Losey without the consent or signature of the other. At all times when the three mortgages were taken out petitioner owned, as her sole and separate property, the real estate upon which the deeds of trust were placed. Losey never acquired an interest in petitioner's *502 real property even though he signed two of the deeds of trust. On August 4, 1981, Losey left petitioner and has never returned. Petitioner discovered, upon her arrival home that day, that Losey had taken her 280ZX along with its title, some furs, jewelry, and cash that she kept locked away. Petitioner notified the police and her insurance company. However, petitioner's policy did not cover, as a theft loss, property taken by a spouse. After she discovered Losey was gone, petitioner contacted Nancy Losey Ramsdell, another ex-wife of Losey and the mother of his children, to inquire whether or not Losey was there. Petitioner also contacted the Sacramento Motor Vehicle Department hoping to obtain information about Losey and the whereabouts of her car. In a short period of time she learned that Losey had sold the car on August 4, 1981, to a dealer for $ 11,000. Throughout the remaining portion of 1981 and during 1982 petitioner continued her efforts to locate Losey hoping to recover some of her property, and she did not claim a theft loss deduction on her 1981 Federal income tax return. On November 19, 1981, petitioner filed for an annulment. On March 29, 1982, the Superior *503 Court of Orange County, California, granted petitioner an annulment on the grounds of fraud. Contained in the court order was a list of property the court found to be the sole and separate property of petitioner. Among the property listed was the 1981 280ZX and/or the proceeds from the sale thereof. Sometime between November 19, 1981, and July 9, 1982, petitioner sold the real estate located at Huntington Beach, California, because she could no longer afford to pay off the four outstanding mortgages and feared foreclosure. Respondent mailed petitioner a statutory notice of deficiency and petitioner timely filed her petition for redetermination in this Court. OPINION The issue we must decide is whether petitioner sustained a theft loss in 1982. Petitioner contends that she is entitled to a $ 61,000 theft loss deduction because Losey fraudulently induced her to borrow against the equity of her personal residence and took the proceeds for his personal use. The $ 61,000 represents the total of three loans obtained jointly by petitioner and Losey. Respondent contends that petitioner is not entitled to deduct any of the $ 61,000 because no theft loss was sustained and alternatively *504 contends that if a theft loss was sustained that the proper year for claiming the deduction is 1981 not 1982. A taxpayer is allowed to deduct, in the taxable year in which it is sustained, any loss arising from a theft that is not compensated for by insurance or otherwise. Sec. 165(a), (c)(3) and (e). [2] In order for a deduction to be allowed the taxpayer must prove (1) that a theft occurred; (2) that as a result of the theft a loss was sustained; and (3) the amount of the loss. Sec. 165(a) and (e); secs. 1.165-7(b)(i) and 1.165-8(c), Income Tax Regs.
We agree with petitioner that Losey induced her to borrow $ 61,000 against her separate property and converted some of it to his own personal use. However, whether these acts constitute a "theft," for purposes of section 165(e), must be determined under state law. Bellis v. Commissioner, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973); Luman v. Commissioner, 79 T.C. 846, 860 (1982). *505 Since the alleged theft occurred in California, we must look to that State's law. Under California law, the crime of theft is defined as the "feloniously stealing, taking, carrying, leading or driving away the personal property of another or the fraudulent appropriation of property by a person to whom such property has been entrusted, or the defrauding of money, labor or real or personal property of another by false or fraudulent representation or pretense." Cal. Penal Code sections 484 and 490(a) (West 1988). We will analyze each loan separately, below, as to whether or not petitioner sustained a deductible theft loss with respect to any portion of the loans proceeds. Petitioner and respondent agree on the facts with respect to each loan. We assume, without deciding, that the proceeds of the $ 15,000 and $ 20,000 loans were petitioner's property. The $ 26,000 loan, however, requires a separate analysis. First Loan -- $ 15,000
The evidence shows that petitioner and Losey jointly obtained the $ 15,000 loan for the specific purpose of starting a carpentry business; that they were jointly involved in the business; that the proceeds of the loan *506 were used to purchase business assets and pay the lease; and that the business failed sometime between March 6, 1980, and August 22, 1980. Petitioner presented no evidence indicating that Losey used any of the proceeds for any purpose other than to purchase assets for their business. Nor is there any evidence that Losey took assets out of the business for his own use. In fact, petitioner testified that she sold the business assets sometime after its failure. Although we believe that petitioner would not have borrowed against her real estate, but for Losey's inducement, we do not find his inducement to be the cause of petitioner "loss". The type of "loss" contemplated under section 165(e) is a loss arising from or caused by a theft. The $ 15,000 loss petitioner alleges she sustained was not caused by Losey's fraudulent inducement, but rather was the result of poor business judgment. The "loss", arose from the carpentry business' failure, not as a result of a theft. We find that petitioner has failed to prove that a theft occurred with respect to the $ 15,000 and hold accordingly. Second Loan -- $ 20,000
The purpose for borrowing the $ 20,000 was to take care of *507 personal expenses and to pay off outstanding business obligations. After payment of a prior judgment and loan transaction fees, only $ 12,421 of the $ 20,000 proceeds was actually received by petitioner and Losey. Thus the most that petitioner would be entitled to claim as a theft loss is $ 12,421. Section 262(a) disallows a deduction for personal living expenses except in the case of a casualty or theft loss to which section 165 is applicable. Sec. 262(a)(4). If petitioner shows that any part of the proceeds used to pay personal expenses was subject to "theft" under section 165(e), then she will be permitted a deduction notwithstanding the general rule of section 262(a). At trial petitioner testified that the carpentry business conducted a lot of cash business, but that she did not believe all of the business' cash income was deposited in their joint bank account from which the business' expenses were to be paid. Petitioner also testified that while she was in the hospital, Losey failed to pay the business debts even though he had assured her that he had. Petitioner alleges that as a result thereof, Losey induced her to take out the $ 20,000 loan and use part of its proceeds *508 to pay off the business debts and part to pay their personal expenses. Although it is possible that Losey, without petitioner's consent, converted some of the proceeds to his own personal use, petitioner failed to present evidence establishing what portion of the loan proceeds, if any, were used to pay off Losey's personal obligations or converted by Losey for his personal use. The mere inducement by Losey of petitioner to take out the loan is not, by itself, a theft. There must be an unlawful taking. Based upon all the evidence before us we are unable to conclude that Losey actually converted some of the proceeds to his personal use without petitioner's consent. Even if we were able to so conclude, the evidence before us is insufficient for us to even estimate under Cohan the amount he converted. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Therefore, we find that petitioner has failed to prove her entitlement to a theft loss deduction with respect to this loan and we hold accordingly. Third Loan -- $ 26,000
Petitioner testified that, although she did not want a new Datsun 280ZX, Losey convinced her to buy one, and that the $ 26,000 was *509 taken out for that purpose. Petitioner further testified that the 280ZX cost about $ 19,000; that they paid for it in full; that the title was to be in their names jointly; and that the remaining $ 2,213.20 of the loan was used as a downpayment on another 1981 Datsun. Although the 280ZX was titled in both their names, the evidence shows that petitioner or Losey alone, without the consent or signature of the other, could transfer its title to a third party. This, in fact, happened on August 22, 1981, when Losey, without petitioner's consent or knowledge, took the 280ZX, sold it for $ 11,000, kept the proceeds for his own personal benefit, and left town. Under California law, a theft, sounding in larceny by trick, occurs when a person parts with possession of his money or property to another with the intent that it shall be used by such other for a specific purpose and at the time such other receives the possession of said money or property he intends to convert it to his own use. People v. Krupnick, 165 Cal. App.2d 755, 332 P.2d 720, 722 (1958). We must first decide whether petitioner is the owner of the property allegedly taken. In order to determine who owns *510 the property where the incidence of Federal taxation depends upon ownership, we must look to state law. Estate of Stewart v. Commissioner, 79 T.C. 1046, 1048 (1982). At the time petitioner and Losey obtained the $ 26,000 loan they were husband and wife and resided in California, a community property state. Under California law property owned by a wife before marriage, and "that acquired after marriage by gift, bequest, devise or descent, with the rents, issues, and profits thereof, is her separate property." Cal. Civ. Code sec. 5107 (West 1983). Property purchased with separate property funds is also the separate property of the acquiring spouse. Stoner v. Stoner, 147 Cal. App.3d 858, 862, 195 Cal. Rptr. 351, 354 (1983). There is also a statutory presumption that property acquired by either spouse during the marriage is community property. Cal. Civ. Code secs. 5107, 5110 (West 1983). This presumption applies to loan proceeds as well. Stephenson v. Stephenson, 162 Cal. App.3d, 1057, 1084, 209 Cal. Rptr. 383, 401 (1984); Gudelj v. Gudelj, 41 Cal.2d 202, 259 P.2d 656, 661 (1953). *511 However, the presumption may be overcome by a showing that the loan was extended on "the faith of existing separate property belonging to the acquiring spouse." Stephenson v. Stephenson, supra; Stoner v. Stoner, 147 Cal. App.3d at 863, 195 Cal. Rptr. at 354; Gudeli v. Gudelj, supra.Here, it is clear that the loan was extended because petitioner secured it with her separate property, i.e., her home. Thus, we find that the loan proceeds were petitioner's separate property and the cars purchased with those funds became her separate property without regard to the fact that Losey was jointly liable on the loan or that his name appeared on the car's title. Searles v. Searles, 99 Cal. App.2d 869, 222 P.2d 938 (1950); Hogevoll v. Hogevoll, 59 Cal. App.2d 188, 194, 138 P.2d 693 (1943); Dyment v. Nelson, 166 Cal. 38, 134 P. 988 (1913); Carle v. Heller, 18 Cal. App. 577, 123 P. 815, 817 (1912). Moreover, it is clear that both Losey and petitioner treated the 280ZX as petitioner's car and that she never intended to give it to Losey. Our finding is further substantiated *512 by the judgment of nullity entered by the Superior Court of Orange County, California, on March 29, 1982, ordering that the 280ZX or its proceeds was the sole and separate property of petitioner. Based upon the evidence before us we find that a theft, within the meaning of section 165(e), occurred and that petitioner sustained a loss as a result thereof. Although we agree that petitioner is entitled to a theft loss deduction, we do not find $ 26,000 to be the amount of the loss she sustained. The amount of the loss is limited to the lesser of the fair market value of the 280ZX immediately before the theft or the adjusted basis in the car as of the date of the theft. Sec. 1.165-7(b), Income Tax Regs.
The fair market value is the price at which property would change hands between a willing buyer and seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. It is clear that the $ 11,000 Losey received from the sale of the car is not representative of the car's true fair market value immediately before he sold it, especially taking into consideration the circumstances surrounding the *513 sale itself. The car had been purchased approximately six months before for $ 19,000 and it is reasonable to assume that its value did not drop $ 8,000 in such a short period of time. We estimate that the six-month-old 280ZX had a fair market value of $ 16,000 immediately before it was stolen. See Cohan v. Commissioner , supra.
Next, we must decide whether petitioner properly claimed the deduction in 1982. Respondent contends that the proper year for deducting the loss under section 165(a) is 1981, the year that petitioner discovered that Losey had stolen her car and the $ 3,500 cash. Petitioner alleges that the proper year for deducting the loss is in 1982, the year that all reasonable prospects of recovering her property from Losey ended. We agree with petitioner. The general rule under subsection 165(e) is that a loss arising from theft is treated as sustained and, therefore, properly deductible in the taxable year the taxpayer discovers the loss. However, if there exists in the year the loss was discovered a claim for reimbursement with a reasonable prospect of recovering the loss, then the loss will not be treated, for purposes of section 165(a), *514 as having been sustained. Secs. 1.165-1(d)(3) and 1.165-8(a)(2), Income Tax Regs. If this situation arises, the loss will be treated as sustained only in the taxable year in which it becomes reasonably certain that no recovery will be received. Determining whether a taxpayer has a reasonable prospect for recovery requires an examination of all relevant facts and circumstances surrounding the deduction. Dawn v. Commissioner, 675 F.2d 1077, 1078 (9th Cir. 1982); sec. 1.165-1(d)(2)(i), Income Tax Regs.
It is clear that petitioner had a claim against Losey for the theft of her property. Her failure to pursue a civil or criminal action against Losey is not necessarily fatal to her claim for a theft loss deduction. Jacobson v. Commissioner, 73 T.C. 610, 613 (1979). After petitioner discovered Losey had taken her car and other property she tried to locate him. She notified the police, she called Nancy Ramsdell to find out if Losey was in Michigan with his children, and she contacted the motor vehicle department. When she later learned that Losey had sold her 280ZX, she went to the dealer who purchased it and learned that Losey had gone to San *515 Diego. Although the evidence does not show when petitioner first learned that Losey was in Hawaii, it does show that a letter dated December 2, 1981, and addressed to a C. Vander Rite, was mailed by the Honolulu Division of Motor Vehicles to petitioner's address. The letter stated that the Division could not furnish any information contained in the state-wide motor vehicle traffic records system without approval from the State of Hawaii Department of Transportation. Petitioner also testified that she continued to try to locate Losey during 1982. In fact, she received a letter in February of 1982 informing her that Losey had been in Hawaii. We find that during the four months remaining in calendar year 1981 there existed a reasonable prospect of petitioner's locating Losey and recovering some of her property. However, a reasonable prospect of recovery no longer existed as of December 31, 1982. Over 16 months had passed from the time the theft occurred and petitioner was no closer to recovering any of her property. Petitioner has carried her burden of proving that the loss was sustained and properly deducted in 1982. Decision will be entered under Rule 155. Footnotes
1. The $ 100 difference represents the sec. 165(h)(1) calculation. Only the excess loss sustained over $ 100 is allowed as a deduction.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for 1981 and all Rule references are to the Tax Court Rules of Practice and Procedure.↩